863 F.2d 647
 130 L.R.R.M. (BNA) 2097, 110 Lab.Cas. P 10,871
 SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL NO.
359, AFL-CIO, Plaintiff-Appellant,
v.
ARIZONA MECHANICAL & STAINLESS, INC., an Arizona
corporation, Defendant,
and
Richwood Metals Corporation, an Arizona corporation,
Defendant-Appellee.
 No. 87-2450.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 7, 1988.
 
 Michael J. Keenan, Ward & Keenan, Phoenix, Ariz., for plaintiff-appellant.
 Peter G. Kline, Jones, Skelton & Hochuli, Phoenix, Ariz., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before POOLE, WIGGINS and BRUNETTI, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Plaintiff/Appellant Sheet Metal Workers (Union) appeals from summary judgment in Richwood Metals (Richwood) favor. The Union brought suit to enforce an arbitration award claiming that Richwood had breached a collective bargaining agreement (CBA) between the parties by using nonunion labor at a work site. Richwood moved for summary judgment contending that it was not a party to the CBA the Union sought to enforce. The Union cross moved for summary judgment arguing that Richwood was the alter ego or essentially the same employer as the corporation (Arizona Mechanical & Stainless (AMS)) that had signed the CBA. The district court granted Richwood's motion for summary judgment.
 
 
 2
 WE REVERSE and REMAND.
 
 BACKGROUND
 
 3
 Prior to July, 1982, AMS was a party to a CBA with the Union. At that time, AMS notified the Union that it would be going out of business. In August, 1982, two former owners of AMS purchased the assets of AMS and began to operate the business under the name Richwood Metals. Richwood carried on the same type of work at the same facility formerly owned by AMS. It also used many of the same employees and equipment of AMS. However, Richwood did not apply the terms of AMS' CBA to its employees. Nor did Richwood ever sign a CBA with the Union.
 
 
 4
 Richwood and the Union engaged in bargaining over whether Richwood would apply AMS' CBA. They bargained to impasse without coming to an agreement. In September, 1982, the Union filed an unfair labor practices complaint with the NLRB alleging that AMS, and its alter ego, Richwood, had refused to bargain with the Union and refused to honor the terms of AMS' CBA with the Union. The Regional Director of the NLRB declined to issue a complaint against Richwood. He stated that Richwood was only a successor to AMS and not an alter ego or single or joint employer with AMS. The General Counsel of the NLRB affirmed the Regional Director's decision not to issue a complaint.
 
 
 5
 In June, 1983, the Union filed a grievance against AMS and Richwood alleging violations of the CBA. Specifically, the Union claimed that Richwood violated an article of the agreement that required the signatory employer to use union labor in any other enterprise it acquired. Pursuant to the CBA, the grievance was first presented to several local adjustment boards. Eventually, the case was taken to the National Joint Adjustment Board for the Sheet Metal Industry (NJAB). On June 21, 1984, the NJAB decided in the Union's favor. It found that the "assets of [AMS] were transferred back to the original owners who then proceeded to operate the identical sheet metal business in the same building. In addition, they retained the same crew of union employees to perform that work." The NJAB noted that the NLRB had dismissed the Union's complaint finding that Richwood was a "successor" to AMS. Even though the NJAB adopted the NLRB's finding that Richwood was a successor to AMS, the NJAB's "conclusion and finding" was "that AMS had the obligation to assure that Richwood understood and undertook to comply with the terms of the agreement then in effect." Accordingly, on June 24, 1985, the NJAB awarded the Union approximately $2,000,000 in damages under the CBA. Richwood did not challenge the award before the NJAB. To date, Richwood has not complied with the NJAB decision. Nor did Richwood bring an action in court to vacate or modify the award. Richwood participated in the grievance procedure but at all times did so stating that it was not bound by the CBA and was not a signatory to the agreement.
 
 
 6
 On April 7, 1986, the Union filed this section 301(a), 29 U.S.C. Sec. 185(a), action to enforce the arbitrator's award in U.S. District Court. On May 23, 1986, Richwood moved for summary judgment arguing that it was not a party to AMS' CBA. The district court granted Richwood's motion and denied the Union's cross motion for summary judgment. The court held that the prior NLRB decision not to issue a complaint took precedence over the inconsistent arbitrator's award. The court further held that Richwood was not barred by the statute of limitations from raising its defenses to the arbitrator's award. The Union timely appealed. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 ANALYSIS
 
 7
 I. Statute of Limitations.
 
 
 8
 The Union, below and on appeal, argued that Richwood was barred by the statute of limitations from raising any defenses to the arbitrator's award. The district court held that Richwood was not barred. A ruling on the appropriate statute of limitations is a question of law reviewed de novo. In Re Swine Flu Prods. Liab. Litig., 764 F.2d 637, 638 (9th Cir.1985).
 
 
 9
 Congress has not enacted a statute of limitations governing actions brought pursuant to section 301(a) of the Labor Management Relations Act. 29 U.S.C. Sec. 185(a). Therefore, as a matter of federal law, the timeliness of a section 301 case is determined by reference to the appropriate state statute of limitations. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 60, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981) (quoting Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05, 86 S.Ct. 1107, 1112-13, 16 L.Ed.2d 192 (1966)); Local 1020 United Bhd. of Carpenters and Joiners of Am. v. FMC Corp., 658 F.2d 1285, 1289 (9th Cir.1981). Cf. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) (in straightforward breach-of-contract suit under section 301, state vacation of arbitration award statute applies; in "hybrid" section 301 suit other statutes of limitations may better serve federal labor policy). Richwood did not challenge the NJAB award until some eleven months after the arbitrator's decision when it filed its summary judgment motion. The Union argues that the appropriate Arizona statute of limitations requires that Richwood file a motion to modify or vacate the award within 90 days of the arbitrator's decision. Ariz.Rev.Stat.Ann. Sec. 12-1513(A).[1] Richwood argues that two other sections of Arizona law apply which do not contain any statutes of limitation. Ariz.Rev.Stat.Ann. Secs. 12-1511, 1512.[2]
 
 
 10
 In an arbitration case, statutes of limitations apply to defenses as well as suits. Sheet Metal Workers' Int'l Assoc., Local No. 252 v. Standard Sheet Metal, Inc., 699 F.2d 481, 483 (9th Cir.1983); Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., 628 F.2d 1023, 1027 (7th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). The Arizona Court of Appeals has held that sections 12-1511 and 1512 delineate the procedure for judicial confirmation of an arbitration award. Section 12-1513, on the other hand, provides for modification, correction or vacation of an award and application for vacation must be made in 90 days. Hatch v. Double Circle Ranch, 22 Ariz.App. 124, 524 P.2d 958, 959 (1974). Thus, it would seem that Richwood's summary judgment motion and its associated defenses effectively seeking to vacate the arbitrator's award is time barred.
 
 
 11
 However, even if Richwood is time barred from raising its defenses to the award, the court must still determine "arbitrability" in the first instance. The court must still determine the threshold issue whether the parties agreed to arbitrate the subject in dispute. AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986); Sheet Metal Workers, 699 F.2d at 483 (where party did not move to vacate arbitrator's award, all defenses except for "arbitrability" are time barred). Richwood's contention that it is not bound by AMS' CBA because it was not a party to it goes to the heart of the "arbitrability" issue. Therefore, we now address whether the district court properly deferred to the NLRB in vacating the arbitrator's award.
 
 
 12
 II. Deference to NLRB's Decision.
 
 
 13
 The Supreme Court has held that although a "successor" employer may have a duty to bargain with the union recognized by its predecessor, it is not bound by the substantive terms of its predecessor's CBA unless it assumes or adopts those obligations. NLRB v. Burns Int'l Sec. Servs. Inc., 406 U.S. 272, 284, 92 S.Ct. 1571, 1580, 32 L.Ed.2d 61 (1972); see also Howard Johnson Co. v. Detroit Local Joint Exec. Bd., 417 U.S. 249, 264-65, 94 S.Ct. 2236, 2244-45, 41 L.Ed.2d 46 (1974) (arbitration provision does not survive where there is no substantial continuity of work force from predecessor to successor employer and where there was no express or implied assumption of the agreement to arbitrate); Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 107 S.Ct. 2225, 2232-35, 96 L.Ed.2d 22 (1987) (discussing and reaffirming Burns ). However, a non-signatory employer may be held to the terms of a CBA signed by another employer under either the "alter ego" doctrine or the "single employer" doctrine. Under the alter ego or single employer doctrines, a non-signatory successor employer will be bound to the terms of its predecessor's CBA if the transaction transferring ownership to the successor is a sham designed to avoid the obligations of a CBA or if the entities comprise an integrated enterprise. Howard Johnson, 417 U.S. at 259 n. 5, 94 S.Ct. at 2242 n. 5.[3] The courts look to such factors as interrelationship of operations, common management, centralized control of labor relations, and common ownership. Gateway Structures, Inc. v. Carpenters 46 N. Cal. Counties Conf. Bd., United Bhd. of Carpenters and Joiners of Am., 779 F.2d 485, 488-89 (9th Cir.1985); J.M. Tanaka Constr. Inc. v. NLRB, 675 F.2d 1029, 1033 (9th Cir.1982).[4] In the instant case, the arbitrator, in effect, found that Richwood was the alter ego of AMS by awarding the Union $2,000,000 under the CBA.
 
 
 14
 However, relying on Carpenters Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1275 (9th Cir.1984), cert. denied, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985), the court below declined to defer to the arbitrator's award because that decision conflicted with the NLRB's prior decision not to issue a complaint.
 
 
 15
 In Stevens, there were two employer companies owned by the same people. One employer was a signatory to a CBA while the other was not. The Regional Director of the NLRB found that the non-signatory employer was not the alter ego of the signatory employer. Id. at 1274. Subsequently, an arbitrator found that the two employers had either single employer, alter ego, or joint venture status vis-a-vis one another and ordered the CBA enforced as to both employers. Id. at 1275. The union brought a section 301(a) action to enforce the arbitrator's award. The appellate court held that where "the arbitrator's award is inconsistent with previous Board findings involving the same parties.... we need not defer" to the arbitrator's decision. Id.
 
 
 16
 In another Ninth Circuit case, Edna H. Pagel, Inc. v. Teamsters Local Union 595, 667 F.2d 1275 (9th Cir.1982), the circuit seems to have delineated a rule opposite to Stevens. In Edna Pagel, the union filed an unfair labor practices charge with the Regional Director of the NLRB. The Regional Director refused to issue a complaint and the General Counsel affirmed the Regional Director's decision. The union later grieved to an arbitrator over the same issue and the arbitrator held for the union. The employer brought an action to vacate the arbitrator's award. We held that:
 
 
 17
 in cases involving issues of fact or contract interpretation the NLRB's refusal to issue a complaint does not act as res judicata or bar a party from seeking arbitration under the collective bargaining agreement and that no collateral estoppel effect attaches to such refusal.
 
 
 18
 Id. at 1279-80 (footnote omitted); see also Paramount Transp. Sys. v. Chauffeurs, Teamsters & Helpers, Local 150, 436 F.2d 1064, 1066 (9th Cir.1971). The court recognized that in refusing to issue a complaint the NLRB does not resolve the merits of the union's grievance in an adversary or trial context.[5]
 
 
 19
 The seeming contradiction between Stevens and Edna Pagel has been addressed by this court. In Warehousemen's Union Local No. 206 v. Continental Can Co., 821 F.2d 1348 (9th Cir.1987), we harmonized the two lines of authority by limiting Stevens in two respects. First, we noted that Stevens was limited to bargaining unit questions arising under section 9(b) of the NLRA, 29 U.S.C. Sec. 159(b). Continental Can, 821 F.2d at 1351. More importantly, we noted in Continental Can that the NLRB in Stevens did not simply decline to issue a complaint. Rather, it accepted the case on the merits and issued a decision and order. Where the Regional Director's only action is to refuse to issue a complaint, as in the present case, Continental Can held that the "established rule" of Edna Pagel will allow an arbitrator to take the case despite an earlier inconsistent NLRB action. Id.; see also Local Joint Exec. Bd. of Las Vegas Culinary Workers Union, Local 226 v. Royal Center, Inc., 796 F.2d 1159, 1164-65 (9th Cir.1986) (NLRB decision not to issue a complaint is not res judicata in a subsequent arbitration).
 
 
 20
 Continental Can applies in the present case. The Regional Director did not accept the Union's unfair labor practice charge on the merits, nor did he issue a decision and order. Rather, he simply declined to issue a complaint. Thus, the NJAB was not precluded from deciding the grievance differently from the NLRB. We hold that the district court erred by giving the prior NLRB decision precedence over the arbitrator's award. We now turn to the issue of whether the arbitrator's award is entitled to deference and should be enforced.III. Remedy.
 
 
 21
 Judicial scrutiny of an arbitrator's decision is extremely limited. The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the CBA. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); Stevens, 743 F.2d at 1275. If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. George Day Constr. Co. v. United Bhd. of Carpenters and Joiners of Am., 722 F.2d 1471, 1477 (9th Cir.1984). This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions. Id.; see also American Postal Workers v. United States Postal Serv., 682 F.2d 1280, 1284 (9th Cir.1982), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). Only when the arbitrator's award actually violates the law or any explicit, well-defined and dominant public policy, is deference inappropriate. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987); George Day, 722 F.2d at 1477. In Misco, the Court stated that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 108 S.Ct. at 371.
 
 
 22
 The Union argues that the arbitrator's award is entitled to deference. However, as noted above, the "threshold question" is whether the parties have agreed to arbitrate the subject in dispute, i.e. whether the CBA created a duty in Richwood to arbitrate the particular grievance. The Supreme Court has clearly held that the "arbitrability" issue is for the courts and not the arbitrator. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT & T, 475 U.S. at 649, 106 S.Ct. at 1418 (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960)). In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Court examined the issue of whether an employer that merged with another company was bound by the arbitration provision of the latter's CBA. The Court found that it would be inappropriate to compel arbitration on this issue because:
 
 
 23
 "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all."
 
 
 24
 Id. at 547, 84 S.Ct. at 913; see also Howard Johnson, 417 U.S. at 258 n. 3, 94 S.Ct. at 2241 n. 3 ("The mere existence of the successorship clauses ... cannot bind [the successor] either to the substantive terms of the agreements or the arbitration clauses thereof"); Amalgamated Clothing and Textile Workers Union v. Ratner Corp., 602 F.2d 1363, 1368 (9th Cir.1979) ("The court, not an arbitrator, must decide whether an entity is bound by the arbitration clause in a collective bargaining agreement which it did not sign.") Thus, the question whether Richwood adopted the CBA's arbitration provision, or was bound by it as an alter ego or single employer, was for the district court in the present case.[6] We remand to the district court for a de novo determination whether Richwood was in fact the alter ego of AMS or otherwise bound by the terms of AMS' CBA. The issue of damages, however, is distinct from the issue of whether Richwood is the alter ego of AMS. If the district court were to find that Richwood is bound by AMS' CBA, it should accord deference to the NJAB's award of damages under the standards outlined above. We express no opinion, however, regarding the proper decision by the district court on the damages issue.
 
 CONCLUSION
 
 25
 The lower court's grant of summary judgment to Richwood is REVERSED. We REMAND to the district court for proceedings in accordance with this opinion.
 
 
 26
 REVERSED and REMANDED.
 
 
 
 [1]
 Ariz.Rev.Stat.Ann. Sec. 12-1513(A) (Modification or correction of award) provides:
 [u]pon application made within ninety days after delivery of a copy of the award to the applicant, if judgment has not been entered thereon, the court shall modify or correct the award ...
 C. An application to modify or correct an award may be joined in the alternative with an application to vacate the award.
 
 
 [2]
 Ariz.Rev.Stat.Ann. Sec. 12-1511 (Confirmation of an award) provides:
 A party seeking confirmation of an award shall file and serve an application therefor in the same manner in which complaints are filed and served in civil actions. Upon the expiration of twenty days from service of the application, which shall be made upon the party against whom the award has been made, the court shall enter judgment upon the award unless opposition is made in accordance with Sec. 12-1512.
 A.R.S. Sec. 12-1512 (Opposition to an award) provides:
 Upon filing of a pleading in opposition to an award, and upon an adequate showing in support thereof, the court shall decline to confirm and [sic] award and enter judgment thereon where
 (3) the arbitrators exceeded their powers ...
 
 
 [3]
 [The alter ego] cases involve a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws, without any substantial change in its ownership or management. In these circumstances, the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor
 Id.
 
 
 [4]
 Two cases in this circuit appear to hold a successor employer liable for trust fund contributions required under its predecessor's CBA without considering whether the successor was an alter ego or single employer or had otherwise adopted the agreement. See Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc., 823 F.2d 289, 293-95 (9th Cir.1987); Trustees for Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell, 812 F.2d 512, 515-16 (9th Cir.1987). In both cases, however, the parties assumed that the "successor" analysis was dispositive and did not raise the issue of whether a further showing was required. We need not, and do not, reach the issue of whether these cases are applicable in this situation
 
 
 [5]
 Richwood cites to Edna Pagel, 667 F.2d at 1280 n. 10, to argue that Edna Pagel does not apply to this case. In footnote 10, the court noted that an NLRB decision deciding a "pure question of board law which involved no factual issues" might preclude an arbitrator's decision in the same case. The alter ego issue, however, is a uniquely factual issue not resolvable as a pure matter of law. Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local 226 v. Royal Center, Inc., 796 F.2d 1159, 1164 (9th Cir.1986), cert. denied, 479 U.S. 1033, 107 S.Ct. 881, 93 L.Ed.2d 835 (1987); Tanaka, 675 F.2d at 1033
 
 
 [6]
 In Gateway Structures, 779 F.2d at 488-89, and Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co., 756 F.2d 742 (9th Cir.1985), we held that the alter ego issue was arbitrable. In both cases, however, only the signatory party was before us on appeal; the nonsignatory party did not challenge the arbitrator's finding. See, Gateway, 779 F.2d at 487-88; Kinney, 756 F.2d at 743-44; see also Gateway Structures, Inc., v. Carpenters' 46 N. Calif. Counties Conference Bd., 681 F.Supp. 1437, 1441-42 (N.D.Cal.1987) (on remand)